## DOWELL *v.* APPLEGATE and others.

*(Circuit Court, D. Oregon. July 8, 1881.)*

1. CONVEYANCE—INSUFFICIENTLY STAMPED—EFFECT OF.

Section 152 of the internal revenue act of June 30, 1864, (13 St. 292,) as amended by act of July 13, 1866, (14 St. 141,) while it avoids the record of a deed not duly stamped, or upon which the stamp is not cancelled, does not affect the validity of the original. Section 156 of said act (13 St. 293) imposes a penalty upon the vendor for not cancelling a stamp put upon his conveyance, but does not affect the validity of the conveyance itself. Section 158 of said act, (13 St. 293,) as amended by the act of July 13, 1866, (14 St. 142,) imposes a penalty upon the maker for not duly stamping his conveyance, or omitting to cancel a stamp thereon, and declares the same void if either omission was made " with intent " to defraud the government; but whoever seeks to set aside or avoid a conveyance on that ground, must allege and prove such fraudulent intent.

2. OMISSION TO STAMP CONVEYANCE.

An allegation that a conveyance was made and stamped for less than the actual consideration, with intent to aid or give color to a former fraudulent conveyance of the same premises to the grantor, or that such conveyance was made and stamped for an " inadequate " consideration, does not show that such conveyance was not duly stamped with intent to evade the stamp act.

3. CONVEYANCE TO DEFRAUD CREDITORS.

A purchaser from the grantee in a conveyance to defraud creditors, without notice of the fraud, is, nevertheless, liable to any of such creditors for any portion of the purchase money remaining unpaid after notice of the fraud, and a court of equity will give such a creditor a lien upon the premises for that amount.

In Equity.

*B. F. Dowell,* in *propria persona.*

*W. Carey Johnson,* for defendants.

DEADY, D. J. This case was commenced in the state circuit court for Douglas county on October 11, 1879, and after sundry proceedings therein was removed to this court by the plaintiff, on December 23, 1880, on the ground that its determination involved the construction of certain provisions of the internal revenue act of June 30, 1864, (13 St. 223,) and the amendments thereto.

Here the plaintiff has restated his case in the form of a bill in chancery, called "the amended bill," which was filed April 6, 1881.

The bill is entitled as one "in aid of execution," and the relief sought is that certain conveyances made by the defendant Jesse Applegate and Cynthia Ann, his wife, to William H. H. Applegate and others, their children, of 1,011 acres of land in Douglas county, between the years 1867 and 1869, except one for 160 acres made in 1871, be set aside as fraudulent and void, so that the same may be sold, and the proceeds applied upon a debt of $6,534.09 due the plaintiff from the defendant Jesse Applegate, upon a judgment obtained by the former against the latter in 1878 for his share of a judgment obtained by the state of Oregon against the plaintiff and said defendent on August 4, 1874, as the sureties in the official bond of Samuel E. May, secretary of state, dated August 4, 1866, and subsequently satisfied by the plaintiff.

The bill alleges that the conveyance to the defendant William H. H. Applegate was for 240 acres of said land, for the "apparent consideration" of $500; that said defendant, on June 24, 1871, "deeded" 200 acres of the same to Charles Drain and John C., his son, for the nominal consideration of $500, while the actual consideration was $2,000 in cash; that the consideration was expressed in the deed at the sum of $500, "to conceal the value of the land, and to cheat and defraud the creditors" of said J. A. by making "the price correspond" with that of the deed to said defendant William A.; and that the stamp thereon is only 50 cents, instead of $2.00, as required by the act of congress. And further, that each and all of said conveyances, including those to said William A. and Charles and John C. Drain, "are illegal and a fraud under" the revenue act aforesaid; that an inadequate consideration was expressed in each of said deeds by the grantors and grantees with the intent of evading the provisions" of said act; that each of said deeds is stamped with a stamp of the value of 50 cents and no more, although the grantors and grantees therein well knew that the land conveyed by each was at the date thereof worth more than

$1,000; that the record of said deeds was made in "violation of the spirit and meaning of sections 152, 156 and 158" of said revenue act; and that none of said stamps were "cancelled," as provided in said act, prior to the recording of said deeds.

The defendants Charles and John C. Drain demur to the bill. · It is not alleged in the bill that they are not purchasers in good faith and for a valuable consideration, and that they are such purchasers was admitted on the argument, and therefore they are not affected by the alleged fraud in the conveyance to said William A.

The only question made upon the demurrer is as to the validity of the deed to Drains under the stamp act of June 30, 1864, as amended by the act of July 13, 1866. The provisions of the act which are cited as bearing upon the question are found in sections 152, 156, and 158, (13 St. 292–4; 14 St. 141–2.) Section 152, as amended, makes it unlawful to record any conveyance not duly stamped, or upon which the stamps are not cancelled as required by law, and declares the record of such conveyance "utterly void," and prohibits it from being used in evidence. It is plain that this section in nowise affects the validity of the original conveyance, but is confined to excluding it from the privilege of record, unless it is duly stamped and the stamps cancelled. Section 156, which is not amended by the act of July 13, 1866, *supra*, imposes a penalty upon any person "who shall fraudulently make use of an adhesive stamp to denote any duty imposed by this act" without cancelling the same. This is a penalty without a prohibition, at least in terms. But it does not follow, if it were both, that a conveyance made contrary to it— one upon which the stamp is fraudulently uncancelled—is therefore void. Generally, where a penalty is imposed for the commission or omission of an act relating to a contract without a prohibition of such contract, the same is not thereby made void.

*In re Pittock*, 2 Sawy. 423, the court, following what is understood to be the doctrine of *Harris* v. *Runnels*, 12 How. 83, laid down the rule as follows:

" Where a statute contains both a prohibition and a penalty, a contract or transaction contrary thereto is absolutely illegal and void, unless it appears, upon a consideration of the whole act, that the legislature did not so intend."

And it is also admitted that a contract made contrary to a penalty may be held void if such appears to have been the intention of the legislature. In such cases much depends upon the nature and amount of the penalty prescribed, and whether it is aimed at the contract itself, or only some form or incident of it; as, whether it was intended to prevent a contract or conveyance of the kind in question, or only as a security that it should be made on a certain kind of paper, or stamped with stamps of a certain value, which shall be cancelled, so as to prevent their reuse. In this case the fact that the statute has, in section 158, in addition to the penalty imposed upon the maker for the omission to stamp a conveyance, provided specially that such conveyance shall be void in case such omission is the result of a fraudulent intent, tends strongly to show that it was not the intention of congress to make a conveyance void for want of cancelling a stamp thereon, in addition to the penalty imposed on that account.

Upon a careful view of the whole act, and the circumstances of the case, it was very clear and satisfactory that such was not the intention of the legislature; and the fact that the stamps were not duly cancelled as alleged in the bill, so far as section 156 is concerned, is therefore altogether immaterial in this controversy. Section 158, as amended, provides that a person who makes a conveyance without duly stamping the same and cancelling the stamps, as required by law, "with intent to evade the provisions of this act," shall be subject to a penalty, and "such" conveyance, "not being stamped according to the law," shall be deemed invalid and of no effect. The provision concerning the cancellation of stamps, and the clause "not being stamped according to law," were added to this section by the amendment of 1866. A conveyance made contrary to this section is void; but the mere omission to stamp the conveyance or cancel the stamps does not constitute or establish a violation of the

section. It must be alleged and proven by the plaintiff not only that the conveyance to the Drains was insufficiently stamped or the stamps not cancelled, but that the omission in either case arose, not from accident or ignorance, but was the result of an "intent to evade the provisions" of the law; that is, with intent to defraud the government of the stamp duty. *Campbell* v. *Wilcox*, 10 Wall. 422; *Green* v. *Holway*, 101 Mass. 243.

The act (schedule B) provides that when the " consideration " of the conveyance does not exceed $500, it shall be stamped with a stamp of the value of 50 cents, and an additional stamp of the same value for every additional $500 of consideration. The statement in the deed of the nature and amount of the consideration, is at most only *prima facie* true, and may be contradicted. Therefore the stamps must be sufficient for the actual consideration, be that more or loss.

It appears from the bill that the conveyance in question is not sufficiently stamped,—the true consideration being $2,000, while that expressed in the deed and for which it is stamped is only $500,—and that the stamp actually used is not cancelled. But it does not appear that the omission to stamp the conveyance as for a consideration of $2,000 rather than $500, or the omission to cancel the one actually used, was the result of an intention to defraud the government; and this intent will not be presumed from the mere fact of the omission, which may have been caused by ignorance or accident. It must be alleged and proved; but the weight to be given to the fact of omission, as an item of evidence, will depend upon the circumstances.

It is true that every one is presumed to intend the ordinary consequences of his voluntary act, (Or. Civil Code, § 766, subd. 3;) and it is equally true that a necessary consequence of the omission to duly stamp this conveyance was a loss to the government. But it is still open to question whether the omission was the voluntary act—the very will and purpose—of the maker of the conveyance; and even if it was, whether the motive of the act was to defraud the government or not.

No reason is alleged for the neglect to cancel the stamp; but the bill ascribes two contradictory motives for the omission to duly stamp the conveyance made by said William A. to the Drains: (1) To make the consideration correspond with that in the conveyance from J. A. to himself, and to promote the purpose for which it was made—to defraud the creditors of said J. A.; and (2) that an "inadequate" consideration was "expressed" in such conveyance, with intent to evade the revenue act.

The omission to stamp the deed from the first motive, does not render it void. An act done with a purpose to defraud or aid in defrauding the creditors of J. A. is not an act done, so far as appears, with intent to defraud the government. Nor does it matter how "inadequate" the consideration for the conveyance is, so that the stamp used corresponds with it in amount. The statute does not require a person to dispose of his property for an "adequate" consideration, with a view of enhancing the revenue of the government from that source, but very properly leaves that to be cared for by the selfishness or the cupidity of the party interested. Neither is the allegation upon this point sufficient, although it suggests that the proper one was in the mind of the pleader. The consideration expressed must not only have been inadequate, but less than the amount actually paid. As section 158 of the stamp act, as amended by the act of March 3, 1865, (13 St. 481,) provides that the title of a purchaser by deed duly stamped shall not be affected by the want of a stamp upon the deed of his grantor or predecessor in the interest, the allegation in the bill that the conveyance to said William A. was not duly stamped, is immaterial, so far as these defendants are concerned.

With this demurrer there was also argued and submitted the demurrer of the defendant Jonas Ellensburg to said bill. The case made in the bill against him is this: The defendant Charles Putnam, a grandson of the defendant J. A., and one of the persons to whom said J. A. conveyed a portion of his real property as aforesaid, on January 19, 1879, sold 42 acres of the same to said Jonas for the sum

of $320, of which $220, or $245, has been paid, and delivered him possession thereof, with a paper writing in the form of a deed, but without a seal, which has been illegally admitted to record; and the prayer of the bill is that said writing be declared "inferior" to the lien of the plaintiff's judgment, or that said Jonas be required to account to him for the balance due on said purchase.

The bill does not allege that J. E. had any notice of the alleged fraudulent character of the conveyance to his grantor, and therefore his purchase in writing, even if it does not amount to a full and formal conveyance, is good against the plaintiff, except as to the unpaid purchase money. For this the plaintiff may, if he makes out his case against Putnam and J. A., have a decree that J. E. pay the unpaid purchase money to him, and that he have a lien upon the land to secure the same. *Wood* v. *Mann*, 1 Sumn. 507; *Flagg* v. *Mann*, 2 Sumn. 563; *McNeil* v. *Magee*, 1 Mass. 269; Story, Eq. Jur. § 64c; § 1503, a, b.

The demurrer of Charles and John C. Drain is sustained, and that of Ellensburg is overruled.